UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: THE VAUGHAN COMPANY, REALTORS,  No. 11-10-10759 JA

Debtor.

JUDITH A. WAGNER, Chapter 11 Trustee of
the bankruptcy estate of the Vaughan Company, Realtors,

Plaintiff,

v.  Adversary No. 11-1227 J

MICHELLE CUNNINGHAM,

Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Cunningham's Motion to Dismiss ("Motion to Dismiss"), filed by Michelle Cunningham, by and through her attorney of record, Law Offices of Brian A. Thomas, P.C. (Brian A. Thomas). *See* Docket No. 9. Plaintiff, Judith A. Wagner, Chapter 11 Trustee of the bankruptcy estate of The Vaughan Company, Realtors ("Trustee"), opposes the Motion. *See* Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss ("Opposing Brief") - Docket No. 12. This adversary proceeding is one of many similarly situated adversary proceedings filed by the Trustee seeking to recover transfers made by the Debtor, The Vaughan Company, Realtors ("VCR"), to investors in furtherance of an alleged Ponzi scheme. The Complaint contains nine separate counts, including claims to recover fraudulent transfers based on actual fraud and constructive fraud under 11 U.S.C. § 548 of the Bankruptcy Code and under applicable New Mexico fraudulent transfer law.

Defendant Michelle Cunningham (Ms. Cunningham), seeks to dismiss the Complaint under Rule 12(b)(6), Fed.R.Civ.P., made applicable to adversary proceedings by Rule 7012,

Fed.R.Bankr.P. for failure to state a claim, arguing that the allegations fail to meet the pleading standards enunciated by the Supreme Court in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.CT. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Ms. Cunningham also asserts that the allegations in the Complaint fail to satisfy the heightened pleading requirements under Rule 9, Fed.R.Civ.P., applicable to fraud claims.

After consideration of the Motion and the Opposing Brief in light of the Complaint, and being otherwise sufficiently informed, the Court finds that the allegations in the Complaint are sufficient to withstand a motion to dismiss as to Counts 2 through 6 of the Complaint. Count 7 is deficient. The Motion does not sufficiently address Counts 1, 8, and 9. The Court will, therefore, deny the Motion as to Counts 2 through 6, grant the Motion as to Count 7, and deny the Motion, without prejudice, as to Counts 1, 8 and 9.

## DISCUSSION

A. <u>Applicable Standards for Evaluating A Motion to Dismiss Under Rule 12(b)(6)</u>

A motion to dismiss for failure to state a claim is governed by Rule 12(b)(6), Fed.R.Civ.P., made applicable to adversary proceedings by Rule 7012, Fed.R.Bankr.P. In considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well pleaded facts and evaluates those facts in the light most favorable to the plaintiff. *Moore v. Guthrie,* 438 F.3d 1036, 1039 (10th Cir. 2006). The applicable standard for assessing a motion to dismiss for failure to state a claim under Rule 12(b), Fed.R.Civ.P. is found in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Under *Twombly,* in order to survive a motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P., the complaint must contain enough facts to state a cause of

action that is "plausible on its face." *Twombly,* 550 U.S. at 570.  In other words, the plaintiff must "nudge [his] claims across the line from conceivable to plausible." *Id.*   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955).  A pleading that contains only "'labels and conclusions,'" a "'formulaic recitation of the elements of a cause of action'" or "'naked assertions' devoid of 'further factual enhancement'" is insufficient to withstand a motion to dismiss. *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555 and 557).  Under this standard, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*   The Court thus takes a two-step approach in evaluating a motion to dismiss:  first, the Court accepts as true all well-pleaded factual allegations, disregarding legal conclusions "'clothed in factual garb'"; second, the Court determines whether the well-pleaded factual allegations state a plausible claim for relief.  *See Tronox, Inc. v. Anadarko Petroleum Corp. (In re Tronox, Inc.),* 429 B.R. 73, 90 (Bankr.S.D.N.Y. 2010)(quoting *McHale v. Citibank (In re 1031 Tax Group, LLC),* 420 B.R. 178, 190 (Bankr.S.D.N.Y. 2009) and citing *Iqbal,* 129 S.Ct. at 1951).  *See also, Iqbal,* 556 U.S. at 679 (stating that "*Twombly* illustrates the two-pronged approach.")).

   The Tenth Circuit has observed that there is some disagreement among Circuit Courts as to whether the new standard enunciated by *Twombly* results in a minimal change, or whether the new standard, in fact, requires a significantly higher standard of pleading.  *Khalik v. United Air Lines,* 671 F.3d 1188, 1191 (10th Cir. 2012)(comparing *In re Travel Agent Comm'n Antitrust Litig.,* 583 F.3d 896, 911 (6th Cir. 2009)(finding that, to satisfy the *Twombly* standard, the plaintiff must plead enough specific facts "to raise a reasonable expectation that discovery will

-3-

reveal evidence") *with id.* at 912 (Merritt, J., dissenting) and *Tamayo v. Blagojevich,* 526 F.3d 1074, 1083 (7th Cir. 2008)(stating that *Twombly* "did not . . . supplant the basic notice-pleading standard")). The Tenth Circuit instructs that the *Twombly* standard is "a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)(internal quotation marks and citations omitted). In short, within the Tenth Circuit, the notice pleading requirement under "Rule 8(a)(2) still lives." *Khalik,* 671 F.3d at 1191. With these principles in mind, the Court will evaluate the sufficiency of the Complaint in light of the Motion.

   B. <u>The Allegations in the Complaint</u>

The Complaint contains eighty-five numbered paragraphs and consists of nine separate counts. Paragraphs 1 through 47 include allegations regarding the nature of the proceeding, jurisdiction and venue, the actions of Ms. Cunningham, the alleged fraudulent transfers to Ms. Cunningham by VCR, and the fraudulent Ponzi scheme allegedly perpetrated by Douglas Vaughan and his company, VCR. The allegations relating to Ms. Cunningham's actions include the following:

1. In 2000, Ms. Cunningham invested $102,000 through a self-directed individual retirement account into VCR's promissory note program with a promised rate of return of 20% per annum. Complaint, ¶ 29.

2. Ms. Cunningham was referred to VCR's promissory note program by Steve Etkind. Complaint, ¶ 5.

3. VCR made payments on Ms. Cunningham's promissory notes for the benefit of Ms. Cunningham. Complaint, ¶ 31.

4. Ms. Cunningham received at least $184,359.99 in transfers from VCR from 2000 through the date that VCR filed its voluntary bankruptcy petition (the "Petition Date"). Complaint, ¶ 32.

5. Ms. Cunningham received at least $74,781.26 in transfers from VCR from February 22, 2006 through the Petition Date. Complaint, ¶ 33.

6. Ms. Cunningham received at least $33,981.32 in transfers from VCR from February 22, 2008 through the Petition Date. Complaint, ¶ 34.

7. The interest rate that Ms. Cunningham was to receive on her investment was unrealistically high. Complaint, ¶ 35.

8. Ms. Cunningham knew or should have known that the alleged interest payments on her note(s) did not reflect legitimate profits from the operation of VCR and that Douglas Vaughan was using VCR to operate a Ponzi scheme. Complaint, ¶¶ 36 and 38.

9. Ms. Cunningham ignored clear signs and "red flags" that Mr. Vaughan was causing VCR to operate a Ponzi scheme. Complaint, ¶ 41.

Paragraphs 48 through 85 of the Complaint incorporate by reference the allegations previously set forth in the Complaint and set forth each claim as a separate count. The counts are:

Count 1    Turnover and Accounting under 11 U.S.C. § 542

Count 2    Actual Fraud under 1 U.S.C. § 548(a)(1)(A) based on alleged transfers from VCR to Ms. Cunningham made within two years of the Petition Date

Count 3    Constructive Fraud under 11 U.S.C. § 548(a)(1)(B) based on alleged transfers from VCR to Ms. Cunningham made within two years of the Petition Date

Count 4  Actual Fraud under state law, N.M.S.A. 1978 § 56-10-18(A)(1) based on alleged transfers from VCR to Ms. Cunningham made within four years of the Petition Date

Count 5  Constructive Fraud under state law, N.M.S.A. 1978 § 56-10-18(A)(2) based on alleged transfers from VCR to Ms. Cunningham made within four years of the Petition Date

Count 6  Constructive Fraud under state law, N.M.S.A. 1978 § 56-10-19(A), based lack of reasonably equivalent value received by VCR in exchange for the transfers and VCR's insolvency at the time, or as a result, of the transfers

Count 7  Constructive Fraud under state law, N.M.S.A. 1978 § 56-10-19(B)

Count 8  Undiscovered fraudulent transfers based on state law

Count 9  Disallowance of Defendant's claim under 11 U.S.C. § 502, or, alternatively, Equitable Subordination of Defendant's claims under 11 U.S.C. § 510(c)

C. The sufficiency of Plaintiff's Actual Fraud Claims

Pursuant to Rule 9(b), Fed.R.Civ.P., made applicable to adversary proceedings by Rule 7009, Fed.R.Bankr.P. , a party alleging fraud "must state with particularity the circumstances constituting fraud[,]" though "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." Rule 9(b), Fed.R.Civ.P. A party asserting a claim for actual fraud under either 11 U.S.C. § 548(a)(1) or applicable state law is subject to the heightened pleading requirements of Rule 9(b), Fed.R.Civ.P.[1]

---

[1] *See Tronox,* 429 B.R. at 92 (stating that the requirements for properly asserting an intentional fraudulent transfer claim fulfill Rule 9(b)'s purpose of providing detailed notice of the alleged fraud claims to defendants); *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec., LLC),* 454 B.R. 317, 329 (Bankr.S.D.N.Y. 2011)(stating that actual fraudulent transfer claims must meet the heightened pleading requirements of Rule 9(b) whether brought under the Bankruptcy Code or applicable New York fraudulent transfer law); *Angell v. Haveri (In re Caremerica, Inc.),* 409 B.R. 346, 353 (Bankr.E.D.N.C. 2009)("A claim alleging an actual fraudulent transfer under §548 must satisfy the particularity requirement of Rule 9(b).")(citations omitted).

Plaintiff asserts claims based on actual fraud under the Bankruptcy Code and under state law.[2] The actual fraud provision found in 11 U.S.C. § 548(a)(1) provides, in relevant part:

> The trustee may avoid any transfer . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –
> (A) made such transfer . . . with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made . . . indebted.
>
> 11 U.S.C. § 548(a)(1).

Similarly, N.M.S.A. 1978 § 56-10-18(A)(1) includes the requirement that the debtor made the transfer "with actual intent to hinder, delay or defraud any creditor of the debtor." Defendants assert that Plaintiff's Complaint falls short of Rule 9(b)'s specificity requirement because the allegations merely state that "Ms. Cunningham invested $102,000 and was paid different amounts at different times based on a consistent interest rate." Motion to Dismiss, p. 9. Ms. Cunningham asserts further that the allegations consist only of Plaintiff's opinion that Ms. Cunningham should have known about certain unspecified facts or should completed her own unspecified investigations. Motion to Dismiss, p. 6.

To satisfy the heightened pleading requirement under Rule 9, Fed.R.Civ.P., a plaintiff must plead the factual grounds upon which the fraud is based sufficiently to afford the defendant fair notice of the fraud claim, including, generally, the time, place, and contents of the alleged fraudulent representation, the identity of the party who made the misrepresentation, and the consequences of the false representation. *Koch v. Koch Indus., Inc.,* 203 F.3d 1202, 1236 (10th Cir. 2000)(citation omitted).[3] Plaintiff correctly points out that fraudulent intent for purposes of

---

[2] Plaintiff asserts her state law fraudulent transfer claims pursuant to 11 U.S.C. § 544(b)(1).

[3] *See also, Madoff,* 454 B.R at 329 (stating that under the Bankruptcy Code or applicable New York fraudulent transfer law, "to state an actual fraudulent transfer claim with Rule 9(b) particularity, a party must ordinarily allege: (1) the property that was conveyed; (2) the timing and, if applicable, frequency of the transfer; and (3) the consideration paid for the transfer.")(citation omitted).

-7-

establishing a claim for actual fraud is determined based on the intent of the transferor, in this instance, VCR, rather than the transferee. *See Crescent Oil Co., Inc. v. Near (In re Crescent Oil Co., Inc.),* 2011 WL 3878377, *2 (Bankr.D.Kan. Aug. 31, 2011)("A plaintiff need only plead and prove the debtors' intent to defraud. There is no pleading requirement of fraud on the part of the transferee."). In addition, when a fraudulent transfer claim is asserted by the bankruptcy trustee, courts often apply a less stringent standard when weighing the sufficiency of the complaint, reasoning that "'a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge.'" *Madoff,* 454 B.R. at 329 (quoting *Nisselson v. Softbank AM Corp., (In re MarketXT Holdings Corp.),* 361 B.R. 369, 395 (Bankr.S.D.N.Y. 2007)(quoting *Picard v. Taylor (In re Park South Sec., LLC),* 326 B.R. 505, 517-518 (Bankr.S.D.N.Y. 2005)(internal quotations omitted)). Nevertheless, many courts require that, even under the less stringent standard applicable to a trustee, to satisfy the particularity requirement of Rule 9 when pleading an actual fraudulent transfer the plaintiff must set forth facts sufficient to apprise the defendant "of the nature of his alleged participation in the fraud,"[4] and at least connect the defendant's actions to the debtor's alleged scheme to defraud.[5]

When there is sufficient evidence of a Ponzi scheme, the "actual intent to defraud" element necessary to recover a transfer as actually fraudulent under either § 548(a)(1)(A) or applicable state law can be established based on a "Ponzi scheme presumption." *See, e.g., Perkins v. Haines*, 661 F.3d 623, 626 (11th Cir. 2011)("With respect to Ponzi schemes, transfers

---

[4]*Eisenberg v. Feiner (In re Ahead by a Length, Inc.),* 100 B.R. 157, 167 (Bankr.S.D.N.Y. 1989)(observing that even under the relaxed standard for meeting the particularity requirement under Rule 9, "each defendant is entitled to be apprised of the nature of his alleged participation in the fraud.")(citation omitted). *See also Pereira v. Grecogas Ltd. (In re Saba Enterprises, Inc.),* 421 B.R. 626, 640-641 (Bankr.S.D.N.Y. 2009)(describing different approaches taken by courts in applying a relaxed standard for plaintiffs with second-hand knowledge of the alleged fraud).
[5]*Crescent Oil,* 2001 WL 3878377 at *2 (requiring that the plaintiff "connect the allegations against the defendant to the debtor's scheme to defraud creditors.").

-8-

made in furtherance of the scheme are presumed to have been made with the intent to defraud for purposes of recovering the payments under §§ 548(a) and 544(b).")(citations omitted); *In re AFI Holding, Inc.*, 525 F.3d 700, 704 (9th Cir. 2008)("'the mere existence of a Ponzi scheme' is sufficient to establish actual intent under 548(a)(1) or a state's equivalent to that section.")(quoting *Hayes v. Palm Seedlings Partners (In re Agricultural Research and Tech. Group, Inc.),* 916 F.2d 528, 535 (9th Cir. 1990)); *S.E.C. v. Resource Dev. Int'l, LLC*, 487 F.3d 295, 301 (5th Cir. 2007)("In this circuit, proving that IERC operated as a Ponzi scheme establishes the fraudulent intent behind the transfers it made.")(citation omitted). *See also Ivey v. Swofford (In re Whitley),* 463 B.R. 775, 781-782 (Bankr.M.D.N.C. 2012)(finding that the Ponzi scheme presumption applicable to 11 U.S.C. § 548 should likewise be applied to the North Carolina fraudulent transfer statute).[6] Under this rule, it is presumed that "any 'transfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay, or defraud creditors.'" *1031 Tax Group,* 439 B.R. at 72 (quoting *Bear Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.),* 397 B.R. 1, 8 (S.D.N.Y. 2007)(quoting *Gredd v. Bear Stearns Sec. Corp. (In re Manhattan Fund Ltd.),* 359 B.R. 510, 517-518 (Bankr.S.D.N.Y. 2007)(additional internal quotation marks omitted).[7]

---

[6]*See also, Gowan v. The Patriot Group, LLC (In re Dreier LLP),* 452 B.R. 391, 424 (Bankr.S.D.N.Y. 2011)(stating that "[c]ourts have uniformly recognized a presumption of actual intent to defraud on the part of the transferor in the context of a Ponzi scheme."); *Merrill v. Abbott (In re Independent Clearing House Co.),* 77 B.R. 843, 860 (D.Utah 1987) (stating that "[o]ne can infer an intent to defraud future undertakers from the mere fact that a debtor was running a Ponzi scheme. Indeed, no other reasonable inference is possible."); *Brandt v. Am. Nat'l Bank and Trust Co. of Chicago (In re Foos),* 188 B.R. 239, 244 (Bankr.N.D.Ill. 1996), *aff'd, in part, and reversed, in part on other grounds by* 1996 WL 563503 (N.D.Ill. 1996)("[W]hen a debtor is operating a Ponzi scheme he knows that he is going to defraud certain investors as sooner or later he will run out of money. Therefore, when an action is brought to recover payments that were part of the Ponzi scheme it is reasonable to presume an intent to defraud."); *Jobin v. Lalan (In re M & L Bus. Mach. Co., Inc.),* 160 B.R. 851, 857 (Bankr.D.Colo. 1993), *aff'd,* 167 B.R. 219 (D. Colo. 1994)("[I]n a Ponzi scheme, the only inference a court can make is that the debtor had the requisite intent to defraud under § 548(a)(1).").

[7]There are some limits to the Ponzi scheme presumption. For example, if the debtor operated a legitimate business in addition to engaging in activities with attributes of a Ponzi scheme, the plaintiff may be

-9-

The allegations in the Complaint describing the promissory note program and VCR's method of conducting business and securing new investors plausibly describe a Ponzi scheme.

> A "Ponzi" scheme, as that term is generally used, refers to an investment scheme in which returns to investors are not financed through the success of the underlying business venture, but are taken from principal sums of newly attracted investments. Typically, investors are promised large returns for their investments. Initial investors are actually paid the promised returns, which attract additional investors.
>
> *Sender v. Nancy Elizabeth R. Heggland Family Trust (In re Hedged-Investments Associates, Inc.),* 48 F.3d 470, 471 n.2 (10th Cir. 1995)(citing *In re Independent Clearing House Co.,* 41 B.R. 985, 994 n.12 (Bankr.D.Utah 1984)).

"The fraud consists of funneling proceeds received from new investors to previous investors in the guise of profits from the alleged business venture, thereby cultivating an illusion that a legitimate profit-making business opportunity exists and inducing further investment." *Wyle v. C.H. Rider & Family (In re United Energy Corp.)*, 944 F.2d 589, 590 n.1 (9th Cir. 1991)(citations omitted). Thus, in a typical Ponzi scheme, (1) the debtor receives funds from investors (which can include parties loaning money to generate a return); (2) investors are promised large returns for their investments; (3) initial investors are actually paid the promised returns, which attracts additional investors; (4) returns to investors are not financed through the success of the underlying business venture, if any, but are taken from principal sums received from newly attracted investments; and (5) the debtor induces investments through an illusion of paying returns to investors from legitimate business activities. For a compilation of factors courts consider to determine whether a Ponzi scheme exists, *see* Kathy Bazoian Phelps and Hon.

---

required to show that the funds plaintiff seeks to recover from investors are traceable to funds the debtor received from earlier investments as part of the Ponzi scheme. *See Agricultural Research*, 916 F.2d at 536 (finding that the plaintiff sufficiently traced the funds). Further, the Ponzi scheme presumption may not apply to transfers made before the debtor began operating a Ponzi scheme. *See also,* Mark A. McDermott, *Ponzi Schemes and the Law of Fraudulent and Preferential Transfers,* 72 Am. Bankr. L. J. 157, 174-175 (1998)(suggesting that the presumption of actual intent to defraud cannot apply in all "Ponzi-type investment programs" and "should be limited to those situations where it is unmistakable that the debtor purposely orchestrated a scheme which, by its very design, could only serve to defraud investors.").

Steven Rhodes, *The Ponzi Scheme Book: A Legal Resource for Unraveling Ponzi Schemes*, § 2.03[1][b] (2012).

The Complaint generally describes the alleged Ponzi scheme perpetrated by Douglas F. Vaughan through VCR and other entities in which Mr. Vaughan held an interest. For example, Plaintiff alleges that VCR issued promissory notes to investors with promised returns that were too good to be true, that the notes were allegedly secured by certain real estate, other investments, and Mr. Vaughan's personal wealth, but that, in fact the money received from investors "was not set aside or utilized to buy real estate or to further real estate projects as purported, but instead was primarily used to make principal and/or interest payments to other investors and to fund VCR's operating expenses . . . and to enrich [Mr.] Vaughan." Complaint, ¶ 21. The Plaintiff also alleges that VCR's expenses "greatly exceeded the cash generated by its business," that VCR "relied entirely on new money raised from third parties through the note program," that "VCR used funds deposited from investors to continue operations and pay note redemption proceeds to other investors and to make other transfers," that because of the "diversion of new investments to pay requests for payment and redemptions from other investors, VCR did not have funds to pay investors on account of their new investments," and that "VCR was able to stay afloat by using the principal invested by some investors to pay other investors the interest and/or principal." *See* Complaint, ¶¶ 17 and 24. Finally, the Complaint recites that in Mr. Vaughan's individual bankruptcy case, the bankruptcy court found that the only way Mr. Vaughan was able to continue his business operations was to obtain additional "'funds from investors who were promised high rates of return on their investments. The funds invested were not utilized as represented; rather they went to pay the high rates of returns to the prior investors. This is a textbook example of a Ponzi scheme.'" *Complaint,* ¶ 27 (quoting

Memorandum Opinion on U.S. Trustee's Motion to Appoint a Chapter 11 Trustee and Motion to Convert Case to Chapter 7, filed in Case No. 7-10-10763 JA as Docket No. 343). These allegations are sufficient to set forth a plausible claim that VCR operated its business as a Ponzi scheme. Thus, the Complaint contains factual allegations sufficient to allege "actual intent to defraud" under the Ponzi scheme presumption.

The allegations in the Complaint also sufficiently connect Ms. Cunningham to the alleged Ponzi scheme. The Complaint identifies Ms. Cunningham's investments, the rate of return, and the total amounts that Plaintiff alleges were transferred to Ms. Cunningham during each look-back period. Absent the incorporation by reference of all previous numbered allegations, including the allegations regarding Ms. Cunningham's investment and the alleged transfers to her, the Court agrees that the individual counts in the Complaint would be insufficient to withstand a motion to dismiss under the *Iqbal* standard.[8] But the allegations incorporated into the fraudulent transfer counts identify the investments that Ms. Cunningham made, connect the investments to the "promissory note program," describe the underlying facts that would demonstrate that the "promissory note program" constituted a Ponzi scheme, and assert that transfers Plaintiff seeks to recover were made to Ms. Cunningham on account of her investment in the alleged scheme. These allegations sufficiently provided the defendant with "'fair notice

---

[8] For example, absent the incorporation by reference of all the allegations in the previous paragraphs, Count 2 of the Complaint would consist of the following allegations:
-The Two Year Transfers were made on or within two years before the Petition Date.
-The Two Year transfers were made by VCR with the actual intent to hinder, delay and defraud some or all of VCR's then existing or future creditors
-The Two Year Transfers constitute a fraudulent transfer avoidable by the Trustee pursuant to § 548(a)(1)(A) of the Bankruptcy Code and recoverable from Cunningham pursuant to section 550(a).
Complaint, ¶¶ 52- 54.
These allegations constitute a formulaic recitation of the statutory elements under 11 U.S.C. § 548(a)(1)(A) and are completely devoid of any factual descriptions of the actions that constitute the alleged fraudulent transfer.

-12-

of plaintiff's claims and the factual background upon which [they] are based . . .'" *Koch v. Koch Indus.,* 203 F.3d at 1236 (quoting *Lawrence Nat'l Bank v. Edmonds (In re Edmonds),* 924 F.2d 176, 180 (10th Cir. 1991)). Thus, the Court concludes that the Complaint satisfies Rule 9, Fed.R.Civ.P. and will deny the Motion as it relates to Plaintiff's actual fraud claims.

   D.  The sufficiency of Plaintiff's Constructive Fraud Claims

Claims to recover transfers under a constructive fraud theory generally require the plaintiff to demonstrate a lack of reasonably equivalent value to the debtor in exchange for the transfer and that the lack of equivalent value received harmed creditors in one of the ways set forth in the applicable statute.[9] The Plaintiff alleges that VCR transferred to Ms. Cunningham

---

[9]Under 11 U.S.C. § 548(a)(1)(B), the trustee may avoid a transfer if the debtor
   (i)   Received less than a reasonably equivalent value in exchange for such transfer or obligation; and
   (ii)  (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation
         (II) was engaged in a business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
         (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
         (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

   11 U.S.C. § 548(a)(1)(B).

Subsections (ii)(II) through (IV) are alternatives to the insolvency element found in subsection (ii)(I). Ms. Cunningham asserts that the allegations fail to satisfy the *Iqbal* and *Twombly* standard, but does not contend that Plaintiff has failed to allege one of the required elements under 11 U.S.C. § 548(a)(1)(B)(ii). The Court need not, therefore, consider the alternative elements in ruling on the Motion.

   Similarly, under N.M.S.A. 1978 § 56-10-18(A)(2), a transfer is fraudulent as to present and future creditors if it was made
      without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
         (a)  was engaged or about to engage in a business transaction for which the remaining assets of the debtor were unreasonably small in relation to the business transaction; or
         (b)  Intended to incur, or believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due.

   N.M.S.A. 1978 § 56-10-18(A)(2).

And under N.M.S.A. 1978 § 56-10-19(A), a transfer is fraudulent as to a present creditor of the debtor,

-13-

more than the principal amount of promissory notes she received under VCR's promissory note program in payments under the notes. Ms. Cunningham argues the allegations relating to Plaintiff's constructive fraud claims fail to meet the *Twombly/Iqbal* standard because they consist only of underlying general assertions with no specific allegations that VCR was insolvent on the dates of transfer. Ms. Cunningham makes no argument with respect to the requirement that VCR received less than a reasonably equivalent value in exchange for the transfers. The Court will, therefore, confine its review to the sufficiency of Plaintiff's allegations of insolvency or one of the other bases for satisfying 11 U.S.C. § 548(a)(1)(B)(ii) or N.M.S.A. 1978 § 56-10-18(A)(2) or § 56-10-19(A).

To sufficiently state a fraudulent transfer claim based on constructive fraud, a Plaintiff need not satisfy Rule 9's heightened pleading requirements. Rule 9 is inapplicable to constructive fraud claims because claims for constructive fraud do not require proof of intent to defraud. *See, e.g., Tronox,* 429 B.R. at 95-96 (stating that, "[s]ince a claim based on constructive fraudulent conveyance need not include any allegations of fraud, the overwhelming weight of authority is that the heightened pleading requirements of Rule 9(b) are inapplicable.")(collecting cases).[10] As a result, the more general notice pleading requirements under Rule 8, Fed.R.Civ.P. apply. *See Goldstein v. BRT, Inc. (In re Universal Marketing, Inc.),* 460 B.R. 828, 834 n.14 (Bankr.E.D.Pa. 2011)(observing that "[m]ost courts have held that the sufficiency of a complaint

---

if the debtor made the transfer or incurred the obligation without receiving reasonably equivalent value in exchange for the transfer or obligation, and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

N.M.S.A. 1978 § 56-10-19(A).

[10]*See also, Sharp v. Chase Manhattan Bank USA, N.A. (In re Commercial Financial Services, Inc.),* 322 B.R. 440, 451-452 (Bankr.N.D.Okla. 2003)(suggesting that because claims for fraudulent transfer based on constructive fraud often seek to recover transfers from innocent parties, and do not accuse the transferee of fraud or deception other than receiving the transfers, Rule 9 ought not to apply, but finding, even if Rule 9(b) applies to constructive fraudulent transfer claims, that the allegations in Plaintiffs' complaint were sufficient).

-14-

asserting constructive fraud claim is measured by Rule 8, not Rule 9.")(citations omitted); *Luria v. Blue Cross Blue Shield of Georgia, Inc. (In re Taylor, Bean & Whitaker Mortg. Corp.),* 2012 WL 2369342, *3 (Bankr.M.D.Fla. March 22, 2012)(finding that "Rule 8(b)(2)'s more liberal standard of notice pleading is applicable to the state law constructive fraud counts.").

Plaintiff bears the burden of demonstrating insolvency.[11] Section § 548(a)(1)(B)(ii)(I), as one of the ways to satisfy 11 U.S.C. § 548(a)(1)(B)(ii), requires a showing that the debtor "was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation." 11 U.S.C. § 548(a)(1)(B)(ii)(I). As the Tenth Circuit has noted in the context of a fraudulent transfer claim brought under the Bankruptcy Code, "[t]he Bankruptcy Code defines insolvency as a 'financial condition such that the sum of such entity's debts is greater than all of such entity's property, at fair valuation,' exclusive of exempt property and fraudulent transfers of a type not at issue here." *In re Sherman*, 18 Fed.Appx. 718, *2 (10th Cir. 2001)(unpublished)(quoting 11 U.S.C. § 101(32)). *See also,* 11 U.S.C. § 101(32)(A)(defining insolvency). Insolvency requires a showing that the debtor is "balance sheet insolvent," meaning that the debtor's liabilities exceed the debtor's assets. *See Gonzales,* 2011 WL 2619609 at *3 (citing *In re Solomon,* 300 B.R. 57, 64 (Bankr.N.D.Okla. 2003), *aff'd, In re Solomon,* 299 B.R. 626, 638 (10th Cir. BAP 2003)).

There are two constructive fraud provisions under the New Mexico Uniform Fraudulent Transfer Act ("UFTA"). *See* N.M.S.A. 1978 § 56-10-18(A)(2) and N.M.S.A. 1978 § 56-10-19(A) (fraudulent transfers as to present creditors). The insolvency element under N.M.S.A.

---

[11]*See Ryan v. Montoya (In re Gonzales),* 2011 WL 2619609, *1 (Bankr.D.N.M. July 1, 2011)(denying trustee's claim to recover fraudulent transfer under 11 U.S.C. § 548(a)(1)(B), where trustee failed to introduce any evidence of insolvency and failed to offer any evidence to establish any of the other three alternative elements under 11 U.S.C. §548(a)(1)(B)(ii)); *May v. Americredit Financial Services, Inc. (In re Green),* 2003 WL 23777712, *2-*3 (Bankr.D.Kan. Feb. 19, 2003)(granting leave to trustee to amend deficient complaint to recover transfer under theory of constructive fraud, observing that complaint failed to allege that the debtor received less than reasonably equivalent value in exchange for the transfer or that the debtor was insolvent on the date of the transfer).

1978 § 56-10-19(A) requires that the debtor was insolvent at the time of the transfer, or became insolvent as a result of the transfer. N.M.S.A. 1978 § 56-10-19(A). This state law articulation of the insolvency element is the functional equivalent of the insolvency requirement under 11 U.S.C. § 548(a)(1)(B)(ii)(I). *Cf. Solomon,* 299 B.R. at 633 (observing that the insolvency elements under the Oklahoma UFTA and § 548 are identical); *Soule v. Alliot (In re Tiger Petroleum Co.),* 319 B.R. 225, 232 (Bankr.N.D.Okla 2004)(finding that "[t]he language of UFTA and § 548 are nearly identical" and that "the same analysis applies under both laws.")(citations omitted). N.M.S.A. 1978 § 56-10-18(A)(2) requires a showing that the debtor:

> (a) was engaged or about to engage in a business transaction for which the remaining assets of the debtor were unreasonably small in relation to the business transaction; or
> (b) Intended to incur, or believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due.

N.M.S.A. 1978 § 56-10-18(A)(2).

The Complaint includes the following allegations regarding VCR's insolvency:

> In 2008 and 2009, VCR's cash expenditures on interest payments and routine business costs greatly exceeded the cash generated by its real estate business. Complaint ¶ 17.

> At all relevant times hereto, the liabilities of VCR were millions of dollars greater than the assets of VCR. At all relevant times hereto, VCR was insolvent in that (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers, VCR was left with insufficient capital. Complaint, ¶ 26.

Such allegations sufficiently set forth facts that could establish an insolvency element under a theory of constructive fraud, whether under the Bankruptcy Code or applicable New Mexico fraudulent transfer law, and the requirements of N.M.S.A. 1978 § 56-18(A)(2).

E.  The remaining Counts:  1, 7, 8 and 9

Count 7 of the Complaint is based on § 15-10-19(B) of the New Mexico Fraudulent Transfer Act.  That section provides:

> A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent.

N.M.S.A. 1978 § 56-10-19(B).

Ms. Cunningham did not specifically address Count 7 in her Motion, but requested dismissal of all claims on the ground that the allegations failed to meet the plausibility standard under *Twombly*.  The Court agrees that the allegations set forth in Count 7 are deficient, even if the prior factual allegations in the Complaint are incorporated by reference into Count 7.

The fraudulent transfers described in N.M.S.A. 1978 § 56-10-19(B) apply to a debtor's transfers to **insiders** of the debtor.  N.M.S.A. 1978 § 56-10-19(B) (a transfer is fraudulent "if the transfer was made to an insider . . .").  There is no allegation in the Complaint that describes Ms. Cunningham's relationship to VCR as anything other than an investor.  Because the Complaint fails to include an allegation necessary to a claim to recover a fraudulent transfer under N.M.S.A. 1978 § 56-10-19(B), that claim fails.  The Court will, therefore, grant the Motion as it relates to Count 7.

The Motion does not expressly address nor specifically seek dismissal of Count 1 other than to describe Count 1 as an "initial claim for Accounting."  Motion, p.7.  As for Count 8, Ms. Cunningham offers in a footnote an observation that Count 8 "appears to reserve the right to sue for transfers that are not known" such that Count 8 "should be deemed waived given the passage of the applicable statute of limitations, the Plaintiff's failure to amend their [sic] complaint to state such claims, and the prejudice to Mrs. Cunningham inherent in Plaintiff reserving the right

-17-

to sue her for other transfers at some point in the future." *See* Motion, p. 7 n.2.   Because the Court has found that the Complaint otherwise withstands Ms. Cunningham's request for dismissal, the Court declines to dismiss Counts 1 and 8 at this time and will deny the Motion as to Counts 1 and 8, without prejudice.

Count 9 of the Complaint requests disallowance of Ms. Cunningham's claim, or, alternatively, equitable subordination of Ms. Cunningham's clam.  *See* Complaint, ¶¶ 82 – 85. In a footnote, Ms. Cunningham states that she has not addressed Count 9 in the Motion, but notes that Ms. Cunningham has not filed a claim in VCR's bankruptcy case.  *See* Motion, p. 10, n. 4. Plaintiff has addressed Count 9 in her Opposing Brief, asserting that the Complaint contains allegations that Ms. Cunningham received a transfer that is voidable and that Ms. Cunningham has not returned the transfer to the trustee such that the claim of Ms. Cunningham should be disallowed under 11 U.S.C. § 502(d).  *See* Opposing Brief, p. 11.   Plaintiff also asserts that the Complaint contains allegations that Ms. Cunningham acted inequitably by failing to conduct reasonable due diligence in making her investment and that her conduct caused injury to other creditors or conferred an unfair advantage on Ms. Cunningham, which actions, Plaintiff contends, would support a claim for equitable subordination under 11 U.S.C. § 510(c).  *See* Opposing Brief, pp. 12 – 13.  The allegations in the Complaint appear to be insufficient to state a claim under either 11 U.S.C. § 502(d) or 11 U.S.C. § 510(c) because Ms. Cunningham has not file a proof of claim in the VCR bankruptcy case, and the claims bar date has run.  However, because Ms. Cunningham did not expressly seek to dismiss Count 9, the Court declines to determine the sufficiency of Count 9 in deciding the instant Motion.

Based on the foregoing, the Court concludes that the Motion will be denied as to Counts 2 through 6, granted as to Count 7, and denied without prejudice as to Counts 1, 8, and 9. A separate order consistent with this Memorandum Opinion will be entered.

                                               /s/ Robert H. Jacobvitz
                                               ROBERT H. JACOBVITZ
                                               United States Bankruptcy Judge

Date entered on docket: October 11, 2012

COPY TO:

Edward Alexander Mazel
James A. Askew
Arland & Associates, LLC
Attorneys for Plaintiff
201 3rd ST NW, STE 505
Albuquerque, NM 87102-3331

Brian A. Thomas
Law Offices of Brian A. Thomas PC
Attorney for Defendant
1201 Lomas Blvd NW, Ste C
Albuquerque, NM 87102